UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

UNITED STATES OF AMERICA                                              PLAINTIFF

VS.                                                         NO. 3:12-CR-37-CWR-FKB

ARTHUR LINDSEY BARNES                                                 DEFENDANT

## MEMORANDUM OPINION AND ORDER

Before the Court is the Motion of Arthur Lindsey Barnes filed on November 14, 2013, pursuant to Title 28, United States Code, Section 2255 purportedly[1] seeking to set aside his Judgment of Conviction and subsequent sentence. Barnes amended his motion on January 2, 2014, *see* [Docket No. 37], claiming that the [Assistant] U.S. Attorney "is in violation of 18 U.S.C. § 1341 for her use of moral turpitude," and that one of the essential elements of the offense to which formed the basis of his guilty plea required submission to a jury. *Id*.

## FACTS AND PROCEDURAL HISTORY

On October 10, 2012, Barnes entered a negotiated plea of guilty to a violation of 18 U.S.C. § 922(u), the theft of firearm from a licensed firearms dealer. Barnes was sentenced on January 25, 2013 to seventy (70) months imprisonment, a three year term of supervised release, and a mandatory assessment in the amount of $100.00. [Docket No. 34]. The judgment of

---

[1] The Court states that the Petitioner purportedly seeks to have this Court set aside his conviction and sentence because, except for the label he affixes to the Motion, it is not clear exactly what he seeks. For example, Barnes writes that "this motion is made on one ground only and that is the Plaintiff's [United States of America] and Representative herein after collectively referred [sic] to as Plaintiff, deprived the movant of his natural liberty and estate/natural property by the use of moral turpitude and by the blatant failure to disclose critical facts." [Docket No. 36]. He further contends the United States is "operating in a bankruptcy capacity" *Id*. Moreover, he asserts that because he had reserved certain "God Given Natural Rights" including the right "not to be compelled to perform under any maritime contract, social security contract, plea agreement, or United States statute/contract, . . .[he] did not enter knowingly, voluntarily, willingly, intentionally and intelligently, with full disclose of the mind." *Id*. Therefore, he declared that his signature is "terminated from all contracts held by the Plaintiff." *Id*. He further contends that he has notified the United States that he has declared his sovereignty via certified mail, *see Affidavit of Terminating Signature From Plea Agreement*, [Docket No. 36], at 3, and therefore, his signature on the plea agreement "is hereinafter terminated." *Id*., at p.4. By purportedly "terminating" his signature, this Court surmises that Barnes asserts that there is no plea agreement.

conviction was entered on January 31, 2013. Through a separate order entered on January 30, 2013, and in line with the parties' agreement, the Court dismissed Counts 2 & 3 of the indictment brought against Barnes. [Docket No. 33]. Count 2 charged Barnes with knowingly receiving and possessing firearms, which were not registered to him in violation of Title 26, United States Code, Sections 5861(d), 5841 and 5871. Count 3 charged him with the intent to cause death or serious bodily harm of another through force and violence while possessing a handgun and taking property from that individual in violation of Title 18 U.S.C., Section 2119(1). Barnes did not appeal his guilty plea on sentence.

Barnes filed this Motion, and it appears that he claims that the plea agreement is not valid because he has declared his sovereignty and terminated his signature. [Docket No. 36], at 4. In short, he contends that he did not enter the plea agreement "knowingly, intentionally, willingly, intelligently and voluntarily, with full disclosure and meeting of the mind." *Id*.

## DEFENDANT'S WAIVER OF HIS RIGHT TO ASSERT CLAIMS UNDER 28 U.S.C. § 2255

On this record, the Court may conclusively determine that Barnes is entitled to no relief; therefore, the Court has not requested a response from the United States. *See* 28 U.S.C. 2255(b). When Barnes entered his negotiated plea of guilty, he did so pursuant to a plea agreement which contained an unambiguous waiver of his rights to appeal the sentence or contest the sentence in any post-conviction proceeding.[2] A defendant may, as part of a plea

---

[2] Barnes signed his Plea Agreement on October 10, 2012. It states in pertinent part:

> 7.    **Waivers.** Defendant, knowing and understanding all of the matters aforesaid, including the maximum possible penalty that could be imposed, and being advised of Defendant's rights . . .in exchange for the U.S. Attorney entering into this plea agreement and accompanying plea supplement, hereby expressly waives the following rights:
>
>> a.    the right to appeal the conviction and sentence imposed in this case, or the manner in which that sentence is imposed, on the grounds set forth in Title 18, United States Code, Section 3742, or on any ground whatsoever, and

agreement, waive the right to appeal, *see*, *United States v. Melancon*, 972 F.2d 566, 567-68 (5th Cir. 1992), and the right to seek post-conviction relief. *United States v. Wilkes*, 20 F.3d 651, 653 (5th Cir. 1994). To determine the effectiveness of a waiver, the district court is responsible for ensuring that the defendant fully understands his rights to appeal and the consequences of waiving that right. *United States v. Baty*, 980 F.2d 977, 978 (5th Cir. 1992), *cert. denied*, 508 U.S. 956, 113 S.Ct. 2457, 124 L.Ed.2d 672 (1993). "To be valid, a defendant's waiver of his right to appeal must be informed and voluntarily. A defendant must know that he had a 'right to appeal his sentence and that he was giving up that right.'" *United States v. Portillo*, 18 F.3d 290, 292-93 (5th Cir. 1994), *cert. denied*, 513 U.S. 893, 115 S.Ct. 244, 130 L.Ed.2d 166 (1994) (*quoting United States v. Melancon*, 972 F.2d at 567). As of part of the plea colloquy, the district court must address the defendant in open court and determine whether defendant understands the waiver and that the waiver applies to the circumstances at issue. *See* Fed.R.Crim.P. 11(b)(1)(N). The plea agreement will be upheld where the record clearly shows that the defendant read and understood it and that he raised no questions regarding any waiver-of-appeal issue. *Portillo*, 18 F.3d at 292-93.

## THE GUILTY PLEA HEARING

Not only did Barnes, a college graduate, sign the plea agreement confirming that he read it or had it read to him; had it explained to him by his attorney; and that he understood it and was

---

      b.   the right to contest the conviction and sentence or the manner in which the sentence was imposed in any post-conviction proceeding, including but not limited to a motion brought under Title 28, United States Code, Section 2255, and any type of proceeding claiming double jeopardy or excessive penalty as a result of any forfeiture ordered or to be order in this case ... . . . .

**Defendant waives these rights in exchange for the United States Attorney entering into this plea agreement and accompanying plea supplement**.

[Docket No. 26], at 4-5 (emphasis in original).

voluntarily agreeing to it, the transcript of the plea hearing conducted on October 10, 2012, without any doubt, establishes that Barnes understood the terms of the plea agreement:

> THE COURT: Are you capable, Mr. Barnes, of consulting with your attorney today and understanding anything that he may tell you?
>
> THE DEFENDANT: Yes, sir, I am.
>
> THE COURT: Do you understand why we're here today and what is happening?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Do you understand the seriousness of these proceedings?
>
> THE DEFENDANT: Yes, sir.
>
> *****
>
> THE COURT: Mr. Sellers [counsel for defendant], have you met with your client?
>
> MR. SELLERS: Yes, sir, your Honor.
>
> THE COURT: Is your client, in your opinion, capable of understanding the proceedings and also capable of understanding the advice that you may have provided to him?
>
> THE COURT: Do you raise any issue with respect to Mr. Barnes' competence either today for the purpose of this hearing or on the date March 13, 2012, for the date that the offense was charged?
>
> MR. SELLERS: No, sir, your Honor. And for the record, there was a motion filed to possibly get mental evaluation. But after talking with my client we addressed those issues and I do believe he's competent for the purposes of this hearing as well as the time of the crime.
>
> The motion was withdrawn after speaking with my client and discussions with the U. S. Attorney's Office. So we did withdraw that motion because my client did assure that he was competent at the time he committed the act and understood the difference between right and wrong. So we did address that issue. I just wanted to make the record to be clear on that.
>
> THE COURT: Thank you for that clarification. I was not aware.
>
> Mr. SELLERS: Yes, sir, your Honor.

THE COURT: Thank you. So as counsel for Mr. Barnes, you do not raise any issue with respect to his competence.

MR. SELLERS: No, sir, your Honor.

THE COURT: To the government, does the government raise any question as to the competency of Mr. Barnes?

MR. KENNEDY: None, your Honor.

*****

THE COURT: I understand that there is a plea agreement. Is your willingness, Mr. Barnes, to plead guilty the result of discussions that your attorney had with the attorney for the government?

THE DEFENDANT: Yes, sir.

THE COURT: Did you have the opportunity to read and discuss the plea agreement and the plea supplement with your lawyer before - - and I imagine you have signed those documents. Correct?

THE DEFENDANT: Yes, sir.

THE COURT: Did you have a chance to discuss those documents with your attorney before you signed them?

THE DEFENDANT: Yes, sir.

THE COURT: Do you fully understand the terms of the plea agreement and the plea supplement?

THE DEFENDANT: Yes, sir.

THE COURT: Mr. Sellers, do you agree that you've discussed those terms with your client?

MR. SELLERS: Yes, sir, your Honor.

THE COURT: Do you agree that he understands the terms of the plea agreement and the plea supplement?

MR. SELLERS: Yes, sir, your Honor.

THE COURT: At this time I'm going to get the government to recite the key provisions of the plea agreement, plea supplement.

MR. KENNEDY: . . . According to the plea agreement, the defendant has agreed to plead guilty to Count 1 . . . .

5

. . .

As part of the plea agreement, there are certain waivers contained in that document that I will highlight at this time. The defendant is specifically and expressly waiving the following rights. The right to appeal the conviction and sentence or the manner in which that sentence is imposed or on any ground whatsoever.

He's further waiving the right to contest the conviction and sentence or the manner in which the sentence was imposed in any postconviction proceeding including, but not limited to, a motion brought under 28 U.S.C. 2255.

. . .

THE COURT: Okay. Mr. Barnes, the government sort of glossed over the rights that you are giving up through your guilty plea, but I want to make sure that you understand that you're giving up your right to appeal the conviction. Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: You're giving up your right to appeal any sentence that the government - - excuse me - - that the court imposes. Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: You will not be able to contest the conviction through any means, through postconviction proceeding, a habeas proceeding or anything in that regard. Do you understand that?

THE DEFENDANT: Yes, sir.

*****

THE COURT: Do the plea agreement and the plea supplement represent your entire understanding that you have with the government?

THE DEFENDANT: Yes, sir.

THE COURT: Has anyone made any other [or] different promise or assurance of any kind whatsoever in an effort to induce you to plead guilty, Mr. Barnes.?

THE DEFENDANT: No, sir.

THE COURT: Do you agree with your client, Mr. Sellers?

MR. SELLERS: Yes, sir, your Honor.

>   THE COURT: Do you understand, Mr. Barnes, that the terms of the plea agreement and the plea supplement are merely recommendations to the court, that I can reject the recommendations of the government without permitting you to withdraw your guilty plea and I can impose a sentence that is more severe than you may anticipate? Do you understand that?
>
>   THE DEFENDANT: Yes, sir.
>
>   THE COURT: Do you also understand that I may impose a sentence that might be less severe than what you might be expecting?
>
>   THE DEFENDANT: Yes, sir.
>
>   THE COURT: But regardless of what sentence I may impose, do you understand that you will not have the right to withdraw your guilty plea at the time of sentencing?
>
>   THE DEFENDANT: Yes, sir.
>
>   THE COURT: Do you understand in this plea agreement you're waiving and giving up your right to impose a sentence - - or to appeal the sentence I give?
>
>   THE DEFENDANT: Yes, sir.
>
>   \*\*\*\*\*
>
>   THE COURT: Now, I'm going to ask you again, do you understand the possible consequences of your guilty plea?
>
>   THE DEFENDANT: Yes, sir.

*See* Transcript of Guilty Plea Hearing, at 6-8, 11-13, 15-16, and 19.

Based on the clear understanding of the plea agreement and Mr. Barnes's statements in open court, there is no question that he made an informed plea. He understood every term, including the terms waiving his right to appeal the conviction or sentence imposed or to contest the sentence in any post-conviction proceeding, such as this § 2255 motion. To the extent that Barnes now claims that his plea was not given knowingly, voluntarily, intentionally and intelligently, his motion is rejected.

**CERTIFICATE OF APPEALABILITY**

Because Barnes has not established that "jurists of reason would find it debatable whether [this] court was correct in its procedural ruling," *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000), no Certificate of Appealability shall issue.  Although Barnes has not filed a notice of appeal, it is appropriate for this Court to take up this issue sua sponte. *See United States v. Jordan*, Nos. 1:08cv146LG, 1:08cv150LG, 1:04CR3LG-JMR, 2008 WL 4614293, at *2, n.2 (S.D. Miss. Aug. 13, 2008) (citing *Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000)).

**CONCLUSION**

For the reasons stated above, the Court finds that the instant motion, pursuant to 28 U.S.C. § 2255, filed on November 14, 2013, and amended through Petitioner's filing of January, 2, 2014 should be **DENIED** without a response from the government or without an evidentiary hearing.

**IT IS THEREFORE ORDERED AN ADJUDGED** that the Motion to Vacate under 28 U.S.C. § 2255 filed by Arthur Lindsey Barnes on November 14, 2013 [Docket Nol. 36] and supplemented by Petitioner's filing on January 2, 2014 [Docket No. 37] is **DENIED**.

A Final Judgment in accordance with this Order will be entered on this day.

**SO ORDERED AND ADJUDGED**, this the 3rd day of July, 2014.

s/Carlton W. Reeves
UNITED STATES DISTRICT JUDGE